# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEREMY MERLE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16 C 5550 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

     Jeremy Merle seeks review of an administrative law judge's decision that he is not disabled under the Social Security Act and therefore not entitled to supplemental security income benefits. Merle argues that the ALJ mischaracterized the medical record, improperly discounted the opinions of his treating mental health professionals, improperly discounted his credibility, and failed to properly evaluate the vocational expert's testimony. He has appealed the decision and has moved for summary judgment. The Commissioner of Social Security has cross-moved for summary judgment, asking to uphold the decision. For the reasons stated below, the Court grants Merle's motion for summary judgment, denies the Commissioner's motion, and remands the case for further consideration.

---

[1] On the Court's motion, Nancy A. Berryhill, who became acting Commissioner of Social Security in January 2017, is substituted as the defendant in this case.

**Background**

Merle applied for child's insurance benefits and supplemental security income benefits on November 28, 2012. He stated that he suffered from severe attention deficit hyperactivity disorder (ADHD), bipolar disorder, anxiety disorder, and a history of polysubstance abuse. Merle initially alleged a disability onset date of May 1, 2005. He later withdrew his claim for child's insurance benefits and amended his onset date to November 28, 2012.

The Social Security Administration (SSA) denied Merle's application on March 1, 2013 and again upon reconsideration on September 5, 2013. Merle then filed a written request for a hearing. On October 14, 2014, Merle appeared with his attorney at a hearing before an administrative law judge. Merle; Dr. Mark Oberlander, an expert requested by the SSA to review the records of Merle's psychiatric treatment; and Margaret Ford, a vocational expert, testified at the hearing. On January 30, 2015, the ALJ issued his decision, finding Merle not disabled.

In his decision, the ALJ applied the five-step sequential evaluation process established by the SSA to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Merle had not engaged in substantial gainful activity since November 28, 2012. At step two, the ALJ found that Merle had severe impairments of ADHD, bipolar disorder, anxiety disorder, and a history of polysubstance abuse/alcoholism.

At step three, the ALJ determined that the severity of Merle's impairments did not meet or medically equal the severity of the listed impairments found in 20 C.F.R. § 404, Subpart P, Appendix 1. The listed impairments the ALJ considered were 12.02 (organic

mental disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders).

The ALJ first considered whether Merle's impairments satisfied the "paragraph B" criteria of the listed impairments. Paragraph B provides a set of functional limitations related to the impairments under 12.02, 12.04, 12.06, and 12.09. To satisfy paragraph B, the claimant's impairments must meet the requisite degree of limitation in one or more of the following categories: activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; and episodes of decompensation. The ALJ also evaluated whether Merle's impairments satisfied the "paragraph C" criteria under 12.02, 12.04, and 12.06. The additional functional limitations under paragraph C may be considered, but only if the paragraph B criteria are not met.

The ALJ concluded that neither the paragraph B nor the paragraph C criteria were satisfied. To reach this conclusion, the ALJ reviewed the opinion of Dr. Oberlander as well as the opinions of Dr. Richard Hamersma and Dr. David Voss, state agency medical consultants who reviewed records of Merle's treatment and provided an assessment of his residual functional capacity (RFC). The ALJ stated that these experts were "unanimous in their firm opinions that [Merle] does not have mental health problems of listing level severity." R. 22. The ALJ specifically adopted the opinion of Dr. Oberlander "because he provided an extremely thorough analysis of [Merle's] mental health status that in all respects is completely consistent with the clinical information in the Merle case file." R. 22.

Addressing the effects of Merle's mental health issues, the ALJ found Merle had "moderate restriction" in activities of daily living and social functioning because, among

3

other activities, he could perform his own hygiene, prepare meals, use a computer, attend classes at a community college, and tolerate occasional interaction with the public. R. 22. The ALJ also stated that Merle had "moderate difficulties" maintaining concentration, persistence, and pace. R. 23. Finally, the ALJ found that Merle had experienced "no episodes of decompensation, which have been of extended duration." R. 23.

At step four, the ALJ evaluated Merle's RFC to perform physical and mental work activities. He concluded that Merle had the "[RFC] to perform a full range of work at all exertional levels" but with certain non-exertional limitations. R. 23. In making this determination, the ALJ examined the opinions of Merle's treating mental health professionals, Dr. Suzanne Streicker, Dr. Elizabeth Brumfield, and Dr. Dale Gody. Dr. Streicker was Merle's psychotherapist since 2009. The ALJ cited purported inconsistencies between Dr. Streicker's formal correspondence and her treatment notes. For example, he stated that Dr. Streicker noted in two undated letters that Merle "had problems attending his college classes," "was anxious around people," and "was still unable to function" despite moderate improvement in his anxiety and depression due to his medications. R. 26. The ALJ then compared these statements with Dr. Streicker's treatment notes, in which she stated Merle "was more productive," "school was ok and fun," and "his computer classes were going great." R. 26. The ALJ also stated that Dr. Streicker's opinion of Merle's marked limitations in the RFC questionnaire that she had completed was contradicted by Merle's testimony about his participation in recreational activities and his interactions with his parents and friends. R. 30. As a result, the ALJ determined to "completely discount" Dr. Streicker's report, finding it to be

4

"without persuasive credibility."  R. 30.

The ALJ similarly discounted the opinion of Dr. Elizabeth Brumfield, Merle's treating psychiatrist since 2008.  He stated that in her RFC questionnaire and formal reports, Dr. Brumfield noted Merle's extreme social anxiety, sleep problems, a depressed mood, and inability to work due to overwhelming stress.  R. 28.  The ALJ stated, however, that Dr. Brumfield had contradicted this assessment in her treatment notes, which indicated that Merle had "a good mood," "was not psychotic," and that "anxiety [was] not a big problem."  R. 28.  The ALJ found Dr. Brumfield's assessment "unsound and not supported by the medical record, or even her own treatment notes."  R. 28.

The ALJ also cited the opinion of Dr. Dale Gody, Merle's psychotherapist from 2008 to 2010.  He noted that Dr. Gody reported Merle's "significant psychiatric disorder during the time he was in treatment with her."  R. 27.  The ALJ stated, however, that because Dr. Gody had not seen Merle since 2010, "[t]his treatment gap made it impossible for [Dr. Gody] to attest to his current status."  R. 27.  The ALJ did not specify what weight he assigned to Dr. Gody's opinion.

The ALJ further discussed the weight he gave to the opinions of the non-examining experts.  He stated that Dr. Oberlander had convinced him that "a drug free and sober Mr. Merle can understand, remember and carry out simple job instructions" but "cannot tolerate stress emanating from numerically strict production demands that must be accomplish with rigid time-sensitive boundaries."  R. 24.  According to the ALJ, Dr. Oberlander also noted inconsistencies between the reports and the respective treatment notes of Dr. Streicker and Dr. Brumfield.  R. 33.  Therefore, he adopted and

5

gave "significant weight" to Dr. Oberlander's opinion. R. 33. The ALJ stated that Dr. Oberlander's opinion "is controlling in this case and trumps all others. It is scientifically sound and has a logic to it that it compelling." R. 28.

The ALJ also cited the RFC assessments completed by Dr. Hamersma and Dr. Voss, the state agency consultants. He stated that both doctors "opined that [Merle] had moderate limitations in his daily activities, his social functioning, and in maintaining his concentration, persistence, and pace, with 1-2 episodes of decompensation of extended duration." R. 30. Although the ALJ noted that he gave "the persuasion nod to Dr. Oberlander," he gave Dr. Hamersma and Dr. Voss "substantial weight for their extensive psychiatric assessments, which were similar to the opinion of Dr. Oberlander." R. 24, 34.

Finally, the ALJ determined that although Merle's medically determinable impairments reasonably could cause his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." R. 33. The ALJ cited a questionnaire Merle completed, highlighting that Merle noted "sleep problems," "a depressed mood," and extreme difficulty working because "nearly every day he is nervous, irritable, and afraid." R. 30. But because Dr. Brumfield's treatment notes indicated that Merle was sleeping better and that his mood was variable, the ALJ concluded that Merle's claims were "not supported by the accompanying records." R. 30. The ALJ also acknowledged that Merle had moderate limitations and found him credible to the extent that he indicated "he cannot handle detailed or complex instructions." R. 34. However, he pointed out that Merle had "a fairly good range of daily activities," including performing household chores, attending gaming events, and

6

having a girlfriend. R. 33. Ultimately, the ALJ found Merle "quite functional in appropriate settings with activities that are right for him." R. 30.

At the final step of the sequential evaluation process, the ALJ found that "jobs exist in significant numbers in the national economy that [Merle] can perform" given his RFC, education, and work experience. R. 34. The ALJ relied on testimony from the vocational expert, who testified that Merle could work as a marker (with 13,000 jobs in Illinois and 300,000 nationally), an industrial cleaner (with 9,000 jobs in Illinois and 120,000 nationally), or a store laborer (with 4,000 jobs in Illinois and 67,000 nationally). R. 35. Based on this testimony, the ALJ found that Merle was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 35. He concluded by finding that Merle "has not been under a disability." R. 35.

On March 22, 2016, the Appeals Council denied Merle's request for review. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security.

**Discussion**

Merle seeks judicial review of the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). Merle has moved for summary judgment, asking the Court to reverse the decision of the ALJ or to remand for a rehearing. The Commissioner has cross-moved for summary judgment, asking the Court to affirm the decision of the Commissioner.

The Court will affirm the decision of the ALJ if it is supported by "substantial evidence." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). Substantial evidence

is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). Although this standard is deferential to the ALJ's determination, the Court must review the evidence critically. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000)). In addition, an ALJ must build a logical bridge from the evidence to his conclusion. *Id.*

Merle argues that the ALJ erred by 1) mischaracterizing the medical evidence to find that Merle's impairments did not meet or equal the listing level severity, 2) failing to defer to the opinions of the treating professionals, 3) determining that Merle was not credible, and 4) failing to properly assess the vocational expert's testimony. The Commissioner argues that the ALJ's findings were reasonable, not patently wrong, and supported by substantial evidence. Because many of the parties' arguments regarding the first two points overlap, the Court will address them together.

**1. ALJ's consideration of the medical evidence and the treating professionals' opinions**

Merle argues that the ALJ selectively considered the medical evidence and erred in failing to give the opinions of his treating mental health professionals controlling weight. Although an ALJ need not address every piece of testimony and evidence in his decision, he "must weigh all the evidence" and may not ignore evidence that suggests a disability finding. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (quoting *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982)). The ALJ must give a treating physician's medical opinion controlling weight if it is well-supported by medical findings and is consistent with other substantial evidence in the record. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). When controlling

8

weight is not given to the treating physician's opinion, the ALJ "is not permitted to simply discard it." *Scrogham*, 765 F.3d at 697. Instead, he must determine what specific weight to give the opinion and "must offer good reasons" for doing so. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). Moreover, an ALJ may not selectively consider the medical reports of treating physicians. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Here, the ALJ stated that Dr. Streicker and Dr. Brumfield, "the claimant's treating psychiatric sources, are given little weight for their respective assessments, which are extreme and inconsistent with the objective medical evidence of record, and even their own treatment notes." R. 34. To support his conclusion, the ALJ discussed several references. But upon close examination of these records, it is apparent that the ALJ considered only evidence supporting his conclusion and ignored evidence corroborating the treating professionals' opinions.

By way of example, the ALJ compared Dr. Streicker's letter, which described that Merle was unable to function, with her treatment records, in which she stated that Merle was working on a website for his parent's business. R. 519. The ALJ highlighted this statement in his decision but failed to mention that, in the same note, Dr. Streicker also wrote that Merle's "brain goes negative," he tries to avoid negative thoughts with "unhealthy habits," and he needed to work on a "cycle of self-loathing and non-productivity." *Id.* The ALJ also referred to a treatment note in which Dr. Streicker reported that Merle indicated school was "OK-fun." R. 506. But the ALJ disregarded Dr. Streicker's observations in the same note that described Merle as "depressed" and having "a sense of inadequacy". *Id.* Similarly, although the ALJ indicated that one of

9

Dr. Streicker's treatment notes stated that Merle did well in computer science, he disregarded that the same note also reflected that Merle did not sleep for two days. R. 503. Finally, though the ALJ pointed out that Dr. Streicker described Merle was more productive, he failed to mention that Dr. Streicker also described Merle as "more irritable since last summer." R. 510.

The ALJ carried out a similarly selective review of Dr. Brumfield's opinion and notes. The ALJ cited to Dr. Brumfield's treatment note, which stated that Merle was looking into volunteer work, while omitting that Dr. Brumfield wrote in the same note that Merle "remains unable to function." R. 575. The ALJ also cited Merle's "good mood" and "improved productivity" in Dr. Brumfield's treatment notes as inconsistent with her assessment of Merle's difficulty in sustaining tasks autonomously. R. 29. But in fact, Dr. Brumfield's treatment notes also often mentioned Merle's depressed mood, increased anxiety, and difficulty staying on track. *See, e.g.,* R. 475, 477, 480, 481, 483, 486. The ALJ made no mention of these statements in finding an inconsistency between Dr. Brumfield's opinion and her treatment notes.

An ALJ cannot ignore evidence that contradicts his conclusion, which is what the ALJ did here. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The Seventh Circuit has found this practice especially problematic where a mental impairment is at issue. "A person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ should have analyzed whether Dr. Brumfield's and Dr. Streicker's assessments were consistent with the *entirety* of their treatment notes. *Id.* Instead, the ALJ selectively cited references in the notes

10

consistent with his determination while failing to address other notes that put these in context and tended to support the treatment professionals' conclusions.

Even if the ALJ had provided sound reasons for refusing to give the opinions of the treating mental health professionals controlling weight, he failed to determine the appropriate weight to give their opinions under the regulatory factors. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Social security regulations require the ALJ to consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir.2009) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ discussed the perceived inconsistencies of the physicians' opinions, but there is no indication that he considered any other factor before assigning little weight to their opinions. Also absent from the ALJ's decision was any assignment of weight to Dr. Gody's opinion. Although the ALJ summarized Dr. Gody's opinion and noted Merle's treatment gap with her, he did not indicate whether or how he considered Dr. Gody's opinion in his determination.

In sum, the ALJ's selective consideration of the medical record and his insufficiently supported decision to discount the opinions of the treating professionals warrant remand.

## 2. ALJ's negative credibility determination

Merle also challenges the ALJ's negative assessment of his credibility. An ALJ's credibility determination is entitled to deference, and the Court must accept the determination unless it is patently wrong. *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). But although this standard is deferential, the ALJ must "consider the entire

case record and give specific reasons for the weight given to the individual's statements." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009)). A finding concerning a claimant's credibility must also be supported by substantial evidence. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

    Here again, the ALJ appears to have based his credibility finding on selective use and interpretation of the record. The ALJ referenced two questionnaires that Merle completed. R. 30. In the first questionnaire, Merle indicated that nearly every day he felt anxious, was unable to stop or control worrying, had trouble relaxing, and was easily irritable. R. 567. He also noted that he regularly felt afraid that something awful might happen. *Id.* Because of these feelings, Merle stated, it was extremely difficult to do work, take care of things at home, and get along with others. *Id.* Merle's answers in the second questionnaire were similar. He indicated that nearly every day he felt depressed, had trouble falling or staying asleep, and felt bad about himself. R. 568. The ALJ concluded that these claims "are not supported by the accompanying records" that noted Merle was sleeping better and had variable mood and anxiety levels. R. 30.

    However, the ALJ disregarded remarks in the treating medical professionals' notes that were consistent with Merle's claims. The notes often indicated that Merle's sleep pattern was "variable," "out of whack," and "bad." *See* R. 570, 573, 576, 579, 580. One treatment note stated that Merle was up for two-day stretches. R. 576. Another stated that he would sleep for four hours and remain awake for the rest of the night. R. 573. The ALJ failed to explain why Merle's repeated reports of poor sleep did not support his complaints in the questionnaire. In addition, the ALJ stated that the

12

treatment notes indicated Merle had variable mood and anxiety levels. However, he neither specified how Merle's varied mood undermined his credibility nor explained why his varied mood was inconsistent with complaints of feeling anxious, irritable, afraid, and depressed nearly every day.

An ALJ must "competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand*, 788 F.3d at 660 (quoting *Minnick*, 775 F.3d at 937). Here, the ALJ concluded he "believes that [Merle] has variable moods and anxiety levels" without explaining why what he cited in the treatment notes was more persuasive than Merle's claims in the questionnaire and without dealing with statements in the notes that supported Merle's claims. R. 30. The ALJ's improper evaluation of the record and failure to adequately support his credibility determination independently requires reversal and remand.

### 3. ALJ's reliance on the vocational expert's testimony

Merle also argues that the ALJ erred in its treatment of the vocational expert's testimony. In his decision, the ALJ relied on the vocational expert's determination of the jobs available in Illinois and nationally based on an individual with Merle's age, education, work experience, and RFC. The expert identified three types of jobs and confirmed that they were consistent with the Dictionary of Occupational Titles ("DOT"). Based on this testimony, the ALJ concluded that Merle was "capable of making a successful adjustment to other work that exists in significant numbers in the economy. A finding of 'not disabled' is therefore appropriate . . . ." R. 35.

First, Merle asserts that the ALJ failed to properly assess the expert's testimony and accepted it without question. The Seventh Circuit has expressed concern

13

regarding the accuracy and source of the jobs contained in the DOT. *See Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). However, neither case held that the ALJ's reliance on unexplained vocational testimony warranted remand. *See Fitzgerald v. Colvin*, No. 15-CV-135-BBC, 2016 WL 447507, at *11 (W.D. Wis. Feb. 4, 2016) (describing the Seventh Circuit's language on the issue as dicta). That said, this is a topic that the ALJ who reviews the case on remand should consider addressing.

Finally, Merle argues that the ALJ should have considered the availability of jobs in the particular region rather than state-wide and national job figures. But social security regulations permit the consideration of work that "exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether — (1) Work exists in the immediate area in which you live . . . ." 20 C.F.R. § 404.1566(a). Moreover, although vocational experts have used an area smaller than an applicant's state to determine the number of jobs available, the Seventh Circuit has accepted the use of state-wide data to ascertain job availability. *See Barrett v. Barnhart,* 368 F.3d 691, 692 (7th Cir. 2004). *See also Gonzalez v. Colvin*, No. 12 C 10262, 2014 WL 4627833, at *8 (N.D. Ill. Sept. 16, 2014) (finding that the vocational expert did not err in defining the relevant region as the State of Illinois). Because the vocational expert provided job availability numbers for each relevant position in Illinois, the ALJ did not err in relying on state-wide job figures in his decision.

## Conclusion

Nancy Berryhill, acting Commissioner of Social Security, is substituted as the

defendant in this case. For the reasons stated above, the Court grants plaintiff's motion for summary judgment [dkt. no. 8] and denies defendant's motion [dkt. no. 16]. The Clerk is directed to enter judgment remanding the case to the Social Security Administration for further proceedings consistent with this decision.

Date: June 15, 2017

_____
MATTHEW F. KENNELLY
United States District Judge